E-FILED IN OFFICE - RJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**22-C-04517-S6**
**8/10/2022 11:33 AM**
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY
# STATE OF GEORGIA

|  |  |  |
|---|---|---|
| JEANNINE STURGILL, individually and as the executor of the estate of William Sturgill, deceased; and CLAIRE STURGILL, individually and as mother and next friend of Wyatt Adair, a minor; | : : : : : : : : | CIVIL FILE ACTION<br>22-C-04517-S6<br>NO.: _____ |
| *Plaintiffs*, | : : | |
| vs. | : : | |
| FOREST RIVER, INC.; FOREST RIVER MANUFACTURING, LLC; LIPPERT COMPONENTS, INC.; LIPPERT COMPONENTS MANUFACTURING, INC; SIGMA SWITCHES PLUS, INC.; K&L ASSET HOLDINGS, INC. d/b/a Northgate RV Center, Inc.; and JOHN DOES # 1-5. | : : : : : : : : | **JURY TRIAL DEMANDED** |
| *Defendants*. | : | |

---

## COMPLAINT

---

Matthew B. Stoddard, Esq.
Robert Noens, Esq.
THE STODDARD FIRM
1534 N. Decatur Rd. NE
Atlanta, GA 30306
P: 470-467-2200
F: 470-467-1300
Matt@legalhelpga.com
Robert@legalhelpga.com


**Attorneys for Plaintiffs**

## TABLE OF CONTENTS

Introduction......................................................................................................................3

The Parties.......................................................................................................................6

Procedural Issues.............................................................................................................9

The Incident....................................................................................................................11

Liability..........................................................................................................................12

      A.      The Forest River Defendants........................................................13

      B.      The Lippert Components Defendants.............................................14

      C.      Defendant Sigma Switches............................................................15

      D.      Defendant K&L Asset Holdings....................................................16

Proximate Cause.............................................................................................................17

Damages..........................................................................................................................18

Prayer for Relief.............................................................................................................20

## INTRODUCTION

1.

This wrongful death and personal injury product liability case is brought by the wife of William "Bill" Sturgill (deceased) and the mother of Bill's four (4) year-old grandson Wyatt Adair against the manufacturer, component part manufacturers, and product seller of the 2012 Crusader Touring Edition Camper with VIN #: 5ZT3CS1B4CD111601, which is shown here:



(hereinafter "the Camper")

2.

The Camper has two slide-out room extenders that provide occupant compartments for daily living. Those slide-out room extenders also retract, thereby eliminating the occupant compartments so the Camper can be moved from place to place. One of the slide-out room extenders can be seen here:



3.

On July 8, 2022, while Bill and his grandson Wyatt were inside the rear of the Camper with both slide-out room extenders fully extended, the rear slide-out room extender began to close.  As a result, the walls inside the Camper began moving inward eliminating the interior occupant compartment where Bill and Wyatt were standing.

4.

As the walls closed in around them, Bill and Wyatt rushed forward.  Wyatt was able to escape, but Bill was crushed to death by the walls.  Four (4) year-old Wyatt was then alone.   A relative later arrived and discovered the disaster.

5.

The dangerous crush hazard inherent in Defendants' slide-out room extenders was a known problem to the Defendants that has been the subject of past customer complaints, including complaints of injury to people, pets, and personal property.

6.

The dangerous crush hazard inherent in Defendants' slide-out room extenders has resulted in multiple National Highway Traffic Safety Administration (NHTSA) investigations. These investigations have led to recalls on similar campers manufactured and sold by Defendants, including NHTSA recall numbers 19V902 and 19V481 (both stating that certain models have a slide-out mechanism that "may activate unintentionally extending or retracting the slide room" causing an "increased risk of injury.").

7.

The dangerous crush hazard inherent in Defendants' slide-out room extenders is so prevalent in Defendants' campers that third party businesses have begun manufacturing and selling RV slide-lock safety mechanisms that can be retrofitted onto Defendants' campers to lock the slide-out room extender in place so that unintended movement cannot occur.

8.

While Defendants knew about the highly dangerous issue of unintended movement of their slide-out room extenders, Defendants never fixed the problem, and no one ever informed Bill or Wyatt or any other members of the Sturgill family that the problem existed.

9.

In fact, Defendant Forest River has a history of failing to report dangerous conditions with its recreational camper vehicles. Specifically, in July of 2015, and as a result of an extensive government investigation, Defendant Forest River admitted that it had failed to report early warning data and failed to launch any safety recalls in a timely fashion as required by federal law. As a consequence of these failures, Defendant Forest River agreed to pay a thirty-five million dollar ($35,000,000.00) civil penalty to the United States Government.

10.

Regarding the dangerous condition at issue here, there are multiple reasonable actions that Defendants should have taken but chose not to take which would have prevented this tragedy.  Those poor choices include but are not limited to Defendants' failure to:

a.    install a slide-out safety bar on the Camper;

b.    install a switch cover on the rear slide-out switch to prevent unintentional activation;

c.    place warning placards on and/or next to the slide-out switch;

d.    install an audible communicator alarm with delay on the slide-out prior to it moving – similar to those found in an airport baggage claims carrousel;

e.    create a floor plan design for the Camper that eliminates the possibility of a crush point;

f.    install an electronic sensor that shuts off the slide motor under excess current conditions;

g.    install a mechanical safety bumper on the edge of the slide-out that senses a crush event and turns off the motor – similar to the bumpers on an elevator door;

h.    install a slide-out control electrical system that does not spontaneously open or close without user input;

i.    institute a recall or at least a service bulletin and send Bill and Jeannine information alerting them of the hazard and the need to fix it;

j.    alert Jeannine and Bill when the Camper was purchased and/or serviced and/or at later dates of the dangerous hazards at issue and how those hazards could be mitigated; and

k.    other solutions to be developed in discovery and presented at trial.

**THE PARTIES**

11.

Plaintiff Jeannine Sturgill is the lawful wife and personal representative of the estate of

William Sturgill deceased.  She is a citizen and resident of the State of Georgia.  Documents evidencing her appointment as the personal representative of William "Bill" Sturgill's estate are attached hereto as Exhibit A.

12.

Plaintiff Claire Sturgill is the biological mother and legal guardian of four (4) year-old Wyatt Adair.  Both Claire and Wyatt are citizens and residents of the State of Georgia.

13.

Defendant Forest River, Inc., an Indiana corporation and wholly owned subsidiary of multi-national conglomerate Berkshire Hathaway, is a manufacturer of recreational vehicles under the brand names Coachmen, Dynamax, East to West, Forest River, Palomino, Prime Time Manufacturing, and Shasta.  It is a citizen and resident of Indiana and another state unknown at this time.

14.

Defendant Forest River Manufacturing, LLC is a related company of Defendant Forest River who is also believed to be a manufacturer of recreational vehicles under the brand names Coachmen, Dynamax, East to West, Forest River, Palomino, Prime Time Manufacturing, and Shasta.  It is a citizen and resident of any state where each of its LLC members are citizens and residents.

15.

Lippert Components, Inc., a Delaware corporation with over two billion dollars ($2,000,000,000.00) in annual sales, is a global manufacturer and supplier of component parts for recreational, marine, automotive, and commercial vehicles.  It is a citizen and resident of Delaware and another state unknown at this time.

16.

Lippert Components Manufacturing, Inc. is a related company of Defendant Lippert Components, Inc., and it is also believed to be a global manufacturer and supplier of component parts for recreational, marine, automotive, and commercial vehicles.  It is a citizen and resident of Delaware and another state unknown at this time.

17.

Defendant Sigma Switches Plus, Inc., an Indiana corporation, manufactures and distributes a wide variety of switches for the automotive, appliance, marine, and computer electronics industry.  It is a citizen of Indiana and another state unknown at this time.

18.

Defendant K&L Asset Holdings, Inc., a Tennessee corporation doing business as Northgate RV Center, is "the largest fifth wheel dealer in Georgia", whose original RV store and corporate headquarters "moved from Chattanooga[, Tennessee] to Ringgold[,]" Georgia in 2005 and then in 2016 the company "built a massive RV Super Store" in Ringgold, Georgia.   It sells recreational vehicles in a smaller store in Alco, Tennessee and the Super Center in Ringgold, Georgia.  It is a citizen of Tennessee and Georgia.  If it was not already a citizen of Georgia, it certainly became one after re-locating its corporate headquarters from Chattanooga to Ringgold, Georgia in 2005 and after opening its Ringgold RV supercenter in 2016. *See*

*https://www.northgaterv.com/about-us*.

19.

Defendant John Doe(s) # 1- 5 are commercial business(es) and/or individuals(s) engaged in the manufacture, design, testing, inspection, marketing, distribution, and sale of the Camper and / or its component parts.  The identities of John Doe(s) are unknown to Plaintiffs at this time

8

but are readily ascertainable to Defendants. Once the identities of John Doe(s) are discovered, this Complaint will be amended to substitute any party that is or may be liable to Plaintiffs.

## PROCEDURAL ISSUES

### 20.

Defendant Forest River and Defendant Forest River Manufacturing (the "Forest River Defendants") were properly served with process in this matter because a duly authorized process server provided the Complaint and a signed summons form to the Forest River Defendants' registered agent: Corporation Services Company, 2 Sun Court Suite 400, Peachtree Corners, Gwinnett County, GA 30092.

### 21.

Defendant Lippert Components and Defendant Component Manufacturing (the "Lippert Component Defendants") were properly served with process in this matter because a duly authorized process server provided the Complaint and a signed summons form to the Lippert Component Defendants' registered agent: Corporation Services Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

### 22.

Defendant Sigma Switches Plus, Inc. was properly served with process in this matter because a duly authorized process server provided the Complaint and a signed summons form to Defendant Sigma Switches Plus, Inc.'s registered agent Brian Rothbauer at:

a.    4703 Wyland Drive, Elkhart, IN 46516; or

b.    54490 Hunters Court, Elkhart, IN 46514; or

c.    1214 N Main Street, Jonesboro, AR, 72401.

23.

Defendant K&L Asset Holdings, Inc. d/b/a Northgate RV Center was properly served

with process in this matter because a duly authorized process server provided the Complaint and

a signed summons form to Matthew D. Brownfield, Esq. at:

a.     Grant, Konvalinka, and Harrison, PC, 632 Chesnutt Street, Chattanooga, TN, or

b.     947 Calloway Court, #899, Chattanooga, TN 37421; or

c.     330 Middleview Drive, Ringgold, GA 30736.

24.

This Court has jurisdiction over the Defendants for a number of reasons including:

a.     The Camper was sold to Bill Sturgill in Georgia.

b.     The incident occurred in Georgia.

c.     Defendants regularly sell RVs in Georgia.

d.     Multiple Defendants have filed paperwork with the Georgia Secretary of State
       allowing them to do business in Georgia.

25.

Neither the statute of limitations nor the statute of repose has run on any claims that

Plaintiffs are bringing in this lawsuit because:

a.     Plaintiff Jeannine Sturgill and her late husband Bill Sturgill purchased the Camper
       new from Defendant K&L Asset Holdings on April 30, 2012;

b.     Pursuant to the powers provided in O.C.G.A. § 38-3-62, Georgia Supreme Court
       Chief Justice Herold Melton declared a Statewide Judicial Emergency that
       suspended, tolled extended and otherwise granted relief from "**any deadline or
       other time schedules or filing requirements** imposed by otherwise applicable
       statutes, rules, regulations, or court orders, in civil and criminal cases"[1] for the
       period of March 14, 2020 through July 14, 2020 – a period of 122 days.[2]

---

[1] Exhibit B, March 14, 2020 Order Declaring Statewide Judicial Emergency.

[2] Exhibit C, July 10, 2020 Fourth Order Extending Declaration of Statewide Judicial Emergency.

(emphasis added).

c.        The incident that is the basis of this Complaint occurred on July 8, 2022;

d.        This lawsuit was filed on the file-stamped date on the first page of the Complaint;

e.        Multiple claims herein involving a continuing duty to warn; and

f.        Multiple claims herein have no statute of repose.

26.

Gwinnett County is an appropriate venue for this lawsuit because the following

Defendants have placed their registered agent in Gwinnett County:

a.        Defendant Forest River, Inc.

b.        Defendant Forest River Manufacturing, LLC.

c.        Defendant Lippert Components Manufacturing, Inc.

**THE INCIDENT**

27.

Between 1:00 p.m. and 2:00 p.m. on July 8, 2022, Bill and Wyatt were at Bill's home in

Chatsworth, Georgia.  The Camper was located in Bill's back yard.

28.

While babysitting Wyatt, Bill began the process of stocking the Camper for a future trip.

29.

Both the front and rear slide-out room extenders for the Camper were in the fully

extended position allowing Bill and Wyatt access to all parts of the Camper.

30.

Bill and Wyatt were in the rear of the camper.

31.

The rear slide-out room extender began to close.

32.

While the walls were closing in, Bill and Wyatt ran forward attempting to escape.

33.

Wyatt ultimately escaped, but the closing walls crushed Bill to death.

34.

Four (4) year-old Wyatt thereafter fled the Camper.

35.

Leland "Bubba" Sturgill eventually arrived and found Wyatt.

36.

Local government responders arrived.

37.

Bill was then pronounced dead from asphyxiation due to crush syndrome.

38.

Wyatt wakes up most nights crying and asking about his grandfather.

## LIABILITY

39.

All Defendants knew or should have known that the Camper and its component parts were defective, unreasonably dangerous, and not accompanied by proper warnings.

40.

All Defendants knew or should have known that the Camper placed the public in general, and Bill and Wyatt in particular, in danger of injury.

41.

All Defendants foresaw or should have foreseen the malfunction of the Camper, its components, and the injury that followed.

42.

All Defendants knew of alternative designs, alternative manufacturing practices, and alternative (or additional) warnings that would have made the Camper and its component parts safer.

43.

Despite their knowledge, Defendants manufactured, designed, tested, inspected, marketed, distributed, and sold the Camper and its component parts.

**LIABILITY**
**A:    The Forest River Defendants**

44.

The Forest River Defendants designed and manufactured the camper.

45.

Because the Forest River Defendants had a duty to manufacture and sell reasonably safe products but breached that duty, the Forest River Defendants are **strictly liable** for the defective and unreasonable dangerous condition of the Camper. *See* O.C.G.A. § 51-1-11(b).

46.

Because the Forest River Defendants had a duty to exercise due care in the marketing, manufacture, design, testing, inspection, marketing, distribution, and sale of the Camper but breached that duty, the Forest River Defendants are liable in **common law negligence**. *See Banks v. ICI Americas,* 264 Ga. 732 (1994); *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994)

47.

Because the Forest River Defendants had a duty to issue reasonable and adequate warnings and breached that duty, the Forest River Defendants are liable for **failure to warn**. *See Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, (11th Cir. 1994) (applying Georgia law); *see also Chrysler Corp. v. Batten*, *supra*.

48.

Because the Forest River Defendants had a duty to refrain from acting in a manner that manifests a negligent, **willful, reckless, and/or wanton disregard** for life or property, the Forest River Defendants are liable for manufacturing defects, design defects, and failure to warn without regard to the statute of repose. *See Chrysler Group, LLC v. Walden*, 303 Ga. 358 (2018).

## LIABILITY
### B:      The Lippert Component Defendants

49.

The Lippert Component Defendants manufactured and designed slide-out system that powered the slide-out room extenders.

50.

Because the Lippert Component Defendants had a duty to manufacture and sell reasonably safe products but breached that duty, the Lippert Component Defendants are **strictly liable** for the defective and unreasonable dangerous condition of the Camper's Slide Out System. *See* O.C.G.A. § 51-1-11(b).

51.

Because the Lippert Component Defendants had a duty to exercise due care in the marketing, manufacture, design, testing, inspection, marketing, distribution, and sale of the

Lippert Components Slide Out System that was incorporated into the Camper but breached that duty, the Lippert Component Defendants are liable in **common law negligence**. *See Banks v. ICI Americas,* 264 Ga. 732 (1994); *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994)

52.

Because the Lippert Component Defendants had a duty to issue reasonable and adequate warnings and breached that duty, the Lippert Component Defendants are liable for **failure to warn**. *See Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, (11th Cir. 1994) (applying Georgia law); *see also Chrysler Corp. v. Batten*, *supra*.

53.

Because the Lippert Component Defendants had a duty to refrain from acting in a manner that manifests a negligent, **willful, reckless, and/or wanton disregard** for life or property, the Lippert Component Defendants are liable for design defects, manufacturing defects, and failure to warn without regard to the statute of repose. *See Chrysler Group, LLC v. Walden*, 303 Ga. 358 (2018).

<strong>LIABILITY</strong><br><strong>C:    Defendant Sigma Switches</strong>

54.

Defendant Sigma Switches designed and manufactured the electrical switch that turned the Lippert Slide Out System on and off.

55.

Because Defendant Sigma Switches had a duty to manufacture and sell reasonably safe products but breached that duty, Defendant Sigma Switches is **strictly liable** for the defective and unreasonable dangerous condition of the Camper switch that controlled the rear slide-out

room extender. *See* O.C.G.A. § 51-1-11(b).

56.

Because Defendant Sigma Switches had a duty to exercise due care in the marketing, manufacture, design, testing, inspection, marketing, distribution, and sale of the Sigma switches to the slide-out room extenders that were incorporated into the Camper but breached that duty, Defendant Sigma Switches is liable in **common law negligence**. *See Banks v. ICI Americas,* 264 Ga. 732 (1994); *Chrysler Corp. v. Batten*, 264 Ga. 723 (1994)

57.

Because Defendant Sigma Switches had a duty to issue reasonable and adequate warnings and breached that duty, Defendant Sigma Switches is liable for **failure to warn**. *See Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, (11th Cir. 1994) (applying Georgia law); *see also Chrysler Corp. v. Batten*, *supra.*

58.

Because Defendant Sigma Switches had a duty to refrain from acting in a manner that manifests a negligent, **willful, reckless, and/or wanton disregard** for life or property, Defendant Sigma Switches is liable for design defects, manufacturing defects, and failure to warn without regard to the statute of repose. *See Chrysler Group, LLC v. Walden*, 303 Ga. 358 (2018).

**LIABILITY**
**D:      Defendants K&L Asset Holdings**

59.

Defendant K&L Asset Holdings sold the Camper to Bill and Jeannine Sturgill.

16

60.

Defendant K&L Asset Holdings serviced and repaired Bill and Jeannine's Camper after the original sale.

61.

Because Defendant K&L Asset Holdings had a duty to properly repair the vehicle so as not to endanger the lives and limbs of others by negligent performance, and because Defendant K&L Asset Holdings breached this duty, Defendant K&L Asset Holdings is liable in **common law negligence**. *See Bills v. Lowery*, 286 Ga. App. 301 (2007).

62.

Because Defendant K&L Asset Holdings had a duty to warn the purchaser of the dangerous and unsafe Camper, and because Defendant K&L Asset Holdings breached this duty, Defendant K&L Asset Holdings is liable for **failure to warn**. *See Gutierrez v. Hilti, Inc.*, 349 Ga. App. 752 (2019).

63.

Because Defendant K&L Asset Holdings had a duty to issue reasonable and adequate warnings in a manner that is not negligent, **willful, reckless, and/or wanton disregard** for life or property, Defendant Sigma Switches is liable without regard to the statute of repose. *See Chrysler Group, LLC v. Walden*, 303 Ga. 358 (2018).

## PROXIMATE CAUSE

64.

But for Defendants' misconduct and Defendants' breaches of the duties, Bill would not have been killed.

65.

But for Defendants' misconduct and Defendants' breaches of their duties, Wyatt would not have been injured.

66.

Each of the acts listed herein is an act of negligence, willfulness, wantonness, and recklessness on the part of the Defendants, and one or more of the acts were the proximate causes of the injuries and damages sustained by the Plaintiffs.

## DAMAGES

67.

Jeannine brings every claim permissible under Georgia law, including all individual and estate claims, and seek all special damages, economic losses, medical expenses, funeral and burial expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, economic, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

a.    Personal injuries;

b.    Pain and suffering;

c.    Mental anguish;

d.    Loss of the capacity for the enjoyment of life;

e.    Wrongful death;

f.    Funeral and burial expenses;

g.    Incidental expenses;

h.    Loss of earnings;

i.    Medical expenses; and,

j.      Consequential damages to be proven at trial.

68.

Jeannine, as Bill's surviving spouse, is entitled to recover the full value of Bill's life from Bill's perspective, and she seeks an amount determined by the enlightened conscience of a fair and impartial jury.

69.

Jeannine is also the personal representative of Bill's estate.  In that capacity, she is entitled to recover for Bill's physical injuries, conscious pain and suffering prior to his death, any emergency medical expenses, all funeral expenses, and all burial expenses incurred by Bill's estate.  Jeannine again seeks an amount determined by the enlightened conscience of a fair and impartial jury.

70.

Claire brings every claim permissible under Georgia law, including all individual claims and all claims brought in her capacity as Wyatt's mother and next friend.  Those claims include all special damages for Wyatt's medical bills, all necessary corresponding expenses related to Wyatt's care as a result of this incident, all of Wyatt's pain and suffering, and all compensatory, special, actual, economic, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

a.      Wyatt's personal injuries;

b.      Wyatt's past, present, and future pain and suffering;

c.      Wyatt's disability

d.      Wyatt's mental anguish;

e.      Wyatt's loss of the capacity for the enjoyment of life;

      f.       Past, present, and future medical expenses for Wyatt's care;

      g.      Incidental expenses related to Wyatt's care;

      h.      Any loss of earning potential for Wyatt;

      i.       Wyatt's permanent injuries; and

      j.       Consequential damages to be proven at trial.

71.

Additionally, all Plaintiffs are entitled to recover all expenses of litigation including attorney's fees pursuant to O.C.G.A. § 13-6-11, because all Defendant has acted in bad faith in the underlying transaction as stated herein.

72.

The jury is entitled to impose punitive damages against all Defendants because each of the Defendants actions as shown herein and as developed at trial evidence an entire want of care which would raise the presumption of conscious indifference to consequences, recklessness, and/or wantonness.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for a judgment against all Defendants for the following:

1)     That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint

2)     Plaintiffs be awarded actual damages in amounts to be shown at trial;

3)     Plaintiffs be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendants;

4)     Punitive damages be imposed on Defendants in an amount to be determined by the enlightened conscience of the jury;

5)     Plaintiffs be awarded attorneys' fees;

6)      Plaintiff be awarded a trial by jury; and,

7)      Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

**TRIAL BY JURY IS HEREBY DEMANDED**

This 10th day of August, 2022.

> _/s/ Matthew B. Stoddard_
> Matthew B. Stoddard, Esq.
> Ga. Bar No.: 558215
> Robert Noens, Esq.
> Ga. Bar No.: 193846
> THE STODDARD FIRM
> 1534 N. Decatur Rd.
> Atlanta, GA 30307
> P: 470-467-2200
> F: 470-467-1300
> matt@legalhelpga.com
> robert@legalhelpga.com
>
> **Attorneys for Plaintiffs**

**Exhibit A**

**IN THE PROBATE COURT OF** _____ MURRAY _____ **COUNTY**

**STATE OF GEORGIA**

**IN RE: ESTATE OF**                          )
                                             )
**WILLIAM DAVID OLAN STURGILL** _____,       )      **ESTATE NO.** 2022-184 _____
**DECEASED**                                  )
                                             )

## LETTERS TESTAMENTARY
*[Relieved of filing returns]*

At a regular term of probate court, the last will and testament dated 02/25/2008 _____

(and codicil(s) dated N/A _____ ) of the above-named decedent, who was

domiciled in this county at the time of his or her death or was domiciled in another state but owned

property in this county at the time of his or her death, was legally proven in solemn form to be the

decedent s will and was admitted to record by order, and it was further ordered that

JEANNINE K. STURGILL _____, named as executor(s) in said will, be

allowed to qualify, and that upon so doing, letters testamentary be issued to such executor(s).

THEREFORE, the executor(s), having taken the oath of office and complied with all

necessary prerequisites of the law, is/are legally authorized to discharge all the duties and exercise

all powers of executor(s) under the will of said decedent, according to the decedent s will and the

law.

Given under my hand and official seal, the *10th* day of *August* _____, 20 *22*

_____
Judge of the Probate Court

*The following must be signed if the judge*
*does not sign the original of this document:*

Issued by:

_____
Clerk of the Probate Court

Certified copies
must have raised
seal with signature
in blue ink

MURRAY COUNTY GEORGIA
[Seal]
SEAL
PROBATE COURT

**<u>Exhibit B</u>**



SUPREME COURT OF GEORGIA

FILED
Administrative Minutes
MAR 1 4 2020
Thérèse S. Barnes,
Clerk/Court Executive
SUPREME COURT OF GEORGIA

March 14, 2020
**(Amended)**

## ORDER DECLARING STATEWIDE JUDICIAL EMERGENCY

WHEREAS, the Governor has determined that a Public Health State of Emergency exists in the State of Georgia due to the spread of the Coronavirus/COVID-19, and whereas that state of emergency constitutes a "judicial emergency" pursuant to OCGA § 38-3-60 et seq., see OCGA § 38-3-60 (2).

Now therefore, pursuant to OCGA § 38-3-61, the Honorable Harold D. Melton, Chief Justice of the Supreme Court of Georgia, DOES HEREBY ORDER AND DECLARE a Statewide Judicial Emergency in the State of Georgia. The nature of this emergency is the continued transmission of Coronavirus/COVID-19 throughout the State and the potential infection of those who work in or are required to appear in our courts.

Thus, in order to protect the health, safety, and liberty of all citizens in this State, the undersigned hereby declares a Statewide Judicial Emergency affecting all courts and clerk's offices in the State as it relates to all judicial proceedings.

To the extent feasible, courts should remain open to address essential functions, and in particular courts should give priority to matters necessary to protect health, safety, and liberty of individuals. Essential functions are subject to interpretation; however, some matters that fall into the essential function category are: (1) where an immediate liberty or safety concern is present requiring the attention of the court as soon as the court is available; (2) criminal court search warrants, arrest warrants, initial appearances, and bond reviews; (3) domestic abuse temporary protective orders and restraining orders; (4) juvenile court delinquency detention hearings and emergency removal matters; and (5) mental health commitment hearings.

In addition, trials in any criminal case for which a jury has been empaneled and the trial has commenced as of the date of this order shall continue to conclusion, unless good cause exists to suspend the trial or declare a mistrial. The decision whether to suspend a criminal trial or declare a mistrial rests with the judge presiding over the case.

To the extent court proceedings are held, they should be done in a manner to limit the risk of exposure, such as by videoconferencing, where possible.

Pursuant to OCGA § 38-3-62, during the period of this Order, the undersigned hereby suspends, tolls, extends, and otherwise grants relief from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to any: (1) statute of limitation; (2) time within which to issue a warrant; (3) time within which to try a case for which a demand for speedy trial has been filed; (4) time within which to hold a commitment hearing; (5) deadline or other schedule regarding the detention of a juvenile; (6) time within which to return a bill of indictment or an accusation or to bring a matter before a grand jury; (7) time within which to file a writ of habeas corpus; (8) time within which discovery or any aspect thereof is to be completed; (9) time within which to serve a party; (10) time within which to appeal or to seek the right to appeal any order, ruling, or other determination; and (11) such other legal proceedings as determined to be necessary by the authorized judicial official.

**This Statewide Judicial Emergency shall terminate on April 13, 2020, at 11:59 p.m., unless otherwise extended.**

Should the state of emergency extend beyond the period indicated above or should the nature of the emergency otherwise require modification, a determination of available alternative remedies for the conduct of court business will be made as necessary, and a corresponding order will be entered and distributed in accordance with Georgia law.

IT IS FURTHER ORDERED, pursuant to OCGA § 38-3-63, that notice and service of a copy of this Order shall immediately be sent to the judges and clerks of all courts in this State and to the clerk of the Georgia Court of Appeals, such service to be accomplished through means to assure expeditious receipt, which include electronic means; and

IT IS FURTHER ORDERED that notice shall also be sent to the media, the State Bar of Georgia, and the officials and entities listed below and shall constitute sufficient notice of the issuance of this Order to the affected parties, counsel for the affected parties, and the public.

IT IS SO ORDERED this 14th day of March, 2020.

Chief Justice Harold D. Melton
Supreme Court of Georgia

cc:
Governor Brian P. Kemp
Lt. Governor Geoff Duncan
Speaker David Ralston
State Bar of Georgia
Administrative Office of the Courts
Judicial Council of Georgia
Council of Superior Court Clerks of Georgia
Department of Juvenile Justice
Criminal Justice Coordinating Council
Council of Accountability Court Judges
Georgia Commission on Dispute Resolution
Institute of Continuing Judicial Education of Georgia
Georgia Council of Court Administrators
Chief Justice's Commission on Professionalism
Judicial Qualifications Commission
Association County Commissioners of Georgia
Georgia Municipal Association
Georgia Sheriffs' Association
Georgia Association of Chiefs of Police
Georgia Public Defender Council

Prosecuting Attorneys' Council of Georgia
Department of Corrections
Department of Community Supervision
Georgia Court Reporters Association
Board of Court Reporting
State Board of Pardons and Paroles

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_Therese S Barnes_ , Clerk

4

**<u>Exhibit C</u>**



SUPREME COURT OF GEORGIA

**FILED**
Administrative Minutes
July 10, 2020

Thérèse S. Barnes
Clerk/Court Executive
SUPREME COURT OF GEORGIA

## FOURTH ORDER EXTENDING DECLARATION OF STATEWIDE JUDICIAL EMERGENCY

On March 14, 2020, in response to the COVID-19 pandemic, the Honorable Harold D. Melton, as the Chief Justice of the Supreme Court of Georgia, issued an Order Declaring Statewide Judicial Emergency pursuant to OCGA § 38-3-61. That Order has been extended three times, with modifications, by orders issued on April 6, May 11, and June 12, 2020. After consulting with the Judicial Council of Georgia, the Judicial COVID-19 Task Force, and other judicial partners, recognizing again that most in-court proceedings compel the attendance of various individuals rather than allowing them to decide how best to protect their own health, and further recognizing that the novel coronavirus continues to spread in Georgia, it is hereby determined that the Order should be extended again.

Courts in Georgia have continued to perform essential functions despite the pandemic. The May 11 extension order also encouraged courts to work diligently to address the backlog of pending cases on a case-by-case basis, and the June 12 extension order announced a plan to reimpose as of July 14 many of the deadlines imposed by law on litigants in civil and criminal cases that have been suspended, tolled, or extended since the initial March 14 Order. This order puts that plan into place and will allow more pending and newly filed cases to move forward in the judicial process in an effort to return to more robust court operations. Given current circumstances, however, this order continues the prohibition on all jury proceedings and almost all grand jury proceedings.

As has been the direction since the original Order, all Georgia courts must continue to conduct proceedings, remotely or in-person, in compliance with public health guidance, applicable statutes and court rules, and the requirements of the United States and Georgia Constitutions, including the public's right of access to judicial

proceedings and a criminal defendant's rights to confrontation and an open courtroom. All courts should continue to use and increase the use of technology to conduct remote judicial proceedings as a safer alternative to in-person proceedings, unless required by law to be in person or unless it is not practicable for technical or other reasons for persons participating in the proceeding to participate remotely. This order further delineates the health precautions required for all in-person judicial proceedings and specifies that courts must adopt operating guidelines consistent with the Georgia Court Reopening Guide and any more specific local public health guidance.

Accordingly, the Order Declaring Statewide Judicial Emergency, which would have expired on Sunday, July 12, 2020, at 11:59 p.m., is further **extended, effective Sunday, July 12, 2020, at 11:59 p.m., until Tuesday, August 11, 2020 at 11:59 p.m.** All Georgia courts shall continue to operate under the restrictions set forth in that Order as extended, with the following clarifications, modifications, and directions. Where this order refers to "public health guidance," courts should consider the most specific current guidance provided by the federal Centers for Disease Control and Prevention (CDC), the Georgia Department of Public Health (DPH), and their local health departments.

## I.    Continued Prohibition on Jury Trial Proceedings and Most Grand Jury Proceedings

(A)    Current public health guidance recommends social distancing and other measures that make it impracticable for courts to protect the health of the large groups of people who are normally assembled for jury proceedings, including jury selection. Accordingly, the suspension of jury trials shall remain in effect and until further order, all courts are prohibited from summoning new trial jurors and grand jurors and from conducting criminal or civil jury trials.

(B)    Grand juries that are already impaneled or are recalled from a previous term of court may meet to attend to time-sensitive essential matters, but these grand juries shall not be assembled except when necessary and only under circumstances in which social distancing and

other public health guidance can be followed. A guidance document about the continued authority of grand juries impaneled prior to the issuance of the Order is included in the Appendix to this order. Courts and counsel are reminded that many criminal cases may proceed on accusation and do not require a grand jury indictment.

(C)    The Judicial COVID-19 Task Force continues to develop policies, procedures, and templates to allow the safe resumption of jury trials and grand jury proceedings. These materials will be publicized when ready, but it is unlikely that any jury proceedings will begin until September or later.

## II.    Reimposition of Deadlines on Litigants

(A)    As announced in the June 12 extension order, this order hereby reimposes all deadlines and other time schedules and filing requirements (referred to collectively herein as "deadlines") that are imposed **on litigants** by statutes, rules, regulations, or court orders in civil and criminal cases and administrative actions and that have been suspended, tolled, extended, or otherwise relieved by the March 14, 2020 Order Declaring Statewide Judicial Emergency, as extended, on the following schedule and with the following exceptions and conditions:

(1)    Consistent with Section I above, **deadlines for jury trial proceedings (including statutory speedy trial demands), deadlines for grand jury proceedings, and deadlines calculated by reference to the date of a civil or criminal jury trial or grand jury proceeding shall remain suspended and tolled.** This provision does not apply to deadlines calculated by reference to the date of non-jury (bench) trials. Until grand jury proceedings are generally authorized, statutes of limitation in criminal cases shall also remain tolled.

(2)    **All other deadlines imposed on litigants shall be reimposed effective July 14, 2020**, as further explained below.

(3)    **In cases that were pending before the March 14 Order,** litigants will have the same amount of time to file or act after

3

July 14 that they had as of March 14. For example, if an answer in a civil case was due on March 20, that answer will now be due on July 20, and if a criminal defendant's pretrial motions were due on March 23, they will now be due on July 23.

(4)    **In cases filed between March 14 and July 13, 2020,** the time for deadlines will begin running on July 14. For example, if a civil complaint was filed in June and the answer would have been due 30 days later, that 30-day period will begin on July 14 and the answer will be due on August 13.

(5)    **In cases filed on or after July 14, 2020**, litigants shall comply with the normal deadlines applicable to the case.

(6)    If the reimposed deadline falls on a **weekend or legal holiday**, the deadline will as normal be the next business day. See OCGA § 1-3-1 (d) (3).

(7)    Any **extension of time** for a litigant's filing or action that was granted by a court, or was agreed or consented to by the litigants as authorized by law, before July 14, 2020 shall also extend the time for that filing or action after July 14. For example, if a litigant's filing was initially due on March 10 but she was granted a 10-day extension of that deadline (to March 20), the filing will be due on July 24 (10 days after July 14).

(8)    Litigants may be entitled to additional time based on the provisions of a local judicial emergency order applicable to their case if such an order tolled applicable deadlines before the March 14, 2020 Order Declaring Statewide Judicial Emergency or tolls applicable deadlines after July 14, 2020.

(9)    The tolling and suspension of deadlines imposed **on litigants** in civil and criminal cases that are **calculated by reference to terms of court** shall be lifted as of July 14, 2020, and any regular term of court beginning on or after July 14 shall count toward such deadlines. See also the May 4, 2020 Guidance on Deadlines and Time Limits Defined by Reference to Terms of Court included in the Appendix.

(10)  The 122 days between March 14 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation.

(11)  Litigants may apply in the normal way for extensions of reimposed deadlines for good cause shown, and **courts should be generous in granting extensions particularly when based upon health concerns, economic hardship, or lack of child care.**

(B)  Recognizing the substantial backlog of pending cases, **deadlines imposed on courts shall remain suspended and tolled**. All courts should nevertheless work diligently to clear the backlog and to comply with usual deadlines and timetables to the extent safe and practicable.

(C)  If before July 14 a court reimposed deadlines by order in a specific case based on the authority to do so granted by prior extension orders, **the case-specific order reimposing deadlines shall control over the deadlines for the same filings or actions reimposed by this statewide order.**

(D)  If in a divorce or adoption case a time period required by law actually passed or passes before the court entered or enters a consent order, consent judgment, or consent decree regarding the divorce or adoption, such order, judgment, or decree shall not be invalid based on any suspension or tolling of the applicable period by the March 14 Order as extended.

## III.  Proceedings Conducted Remotely Using Technology

(A)  All courts should continue to use and increase the use of technology to conduct remote judicial proceedings as a safer alternative to in-person proceedings, unless required by law to be in person or unless it is not practicable for technical or other reasons for persons participating in the proceeding to participate remotely.

(B)    Courts should understand and utilize the authority provided and clarified by the emergency amendments made to court rules on videoconferences and teleconferences.

(C)    Courts may compel the participation of litigants, lawyers, witnesses, and other essential personnel in remote judicial proceedings, where allowed by court rules (including emergency amendments thereto). Such proceedings, however, must be consistent with public health guidance, must not impose undue burdens on participants, and must not be prohibited by the requirements of the United States or Georgia constitutions or applicable statutes or court rules.

(D)    In civil, criminal, juvenile, and administrative proceedings, litigants may expressly consent in the record to remote proceedings not otherwise authorized and affirmatively waive otherwise applicable legal requirements.

(E)    Courts must ensure the public's right of access to judicial proceedings and in all criminal cases, unless affirmatively waived in the record, a criminal defendant's rights to confrontation and an open courtroom.

## IV.    In-Person Proceedings Under Guidelines for Safe Operations

(A)    **Courts have discretion to conduct in-person judicial proceedings, but only in compliance with public health guidance and with the requirements of the United States and Georgia constitutions and applicable statutes and court rules**, including the public's right of access to judicial proceedings and a criminal defendant's rights to confrontation and an open courtroom.

(B)    **No court may compel the attendance of any person for a court proceeding if the court proceeding or the court facility in which it is to be held is not in compliance with this order**, including in particular large calendar calls. **Courts are also prohibited from compelling in-person participation in any court-imposed**

6

**alternative dispute resolution session that is to be conducted in a manner inconsistent with applicable public health guidelines.**

(C) **Each court shall develop and implement operating guidelines** as to how in-court proceedings generally and particular types of proceedings will be conducted to protect the health of litigants, lawyers, judges, court personnel, and the public.

(1)    The Judicial Council Strategic Planning Committee and the Judicial COVID-19 Task Force have issued a bench card entitled "Georgia Court Reopening Guide," which is included in the Appendix and should be used as the template for such operating guidelines, which at a minimum should include all subject matters contained therein. Courts should also consider guidance from local health departments and guidance provided by CDC and DPH; if local public health guidance is more restrictive than the bench card, the local public health guidance should be followed instead.

(2)    With regard to everyone who works in a court facility, the operating guidelines shall require **isolation** of any person with known or suspected COVID-19 and **quarantine** of any person with COVID-19 exposure likely to result in infection, in accordance with the DPH Seventh Amended Administrative Order for Public Health Control Measures, a link to which may be found in the Appendix, or any subsequent version thereof.

(3)    When there is reason to believe that anyone who works or has visited a court facility has been exposed to COVID-19, DPH or the local health department shall be notified and **notification** of persons who may have been exposed shall occur as directed by DPH or the local health department.

(4)    **To the extent operating guidelines previously implemented by courts do not comply fully with the requirements of this order, courts shall develop and implement revised guidelines within 10 days of this order.**

(D)    Courts of different classes that share courthouse facilities or operate in the same county should coordinate their operating guidelines,

7

and should seek to coordinate operating guidelines with non-judicial entities sharing courthouse facilities.

(E)    Each court must submit its operating guidelines to the Administrative Office of the Courts at https://georgiacourts.gov/covid-19-court-operating-guidelines-form/ to be posted at https://georgiacourts.gov/covid-19-court-operating-guidelines/ as a centralized website available to litigants, lawyers, and the public. Operating guidelines also should be prominently posted at courthouse entrances and on court and local government websites to provide advance notice to litigants, lawyers, and the public.

(F)    Operating guidelines shall be modified as public health guidance is modified, and shall remain in effect until public health guidance indicates that they are no longer required.

## V.    Discretion of Chief Judges to Declare More Restrictive Local Judicial Emergencies

(A)    Nothing in the Order Declaring Statewide Judicial Emergency as extended and modified limits the authority of the Chief Judge of a superior court judicial circuit under OCGA §§ 38-3-61 and 38-3-62 to add to the restrictions imposed by the statewide judicial emergency, if such additional restrictions are constitutional, necessitated by local conditions, and to the extent possible ensure that courthouses or properly designated alternative facilities remain accessible to carry out essential judicial functions. A Chief Judge may impose such additional restrictions only by a properly entered order.

(B)    No court may disregard the restrictions imposed by the Order as extended and modified.

8

## VI.   Guidance on Application of the Order

Included in the Appendix are several guidance documents that clarify the application of the Order in particular contexts. Additional guidance documents may be posted on the AOC's website at https://georgiacourts.gov/judicial-council/aoc/. Guidance related to the tolling of deadlines should be read in light of the reimposition of deadlines by this order and by orders in specific cases.

## VII.   Professionalism

With regard to all matters in this challenging time, all lawyers are reminded of their obligations of professionalism. Judges are also reminded of their obligation to dispose of all judicial matters promptly and efficiently, including by insisting that court officials, litigants, and their lawyers cooperate with the court to achieve that end, although this obligation must not take precedence over the obligation to dispose of matters fairly and with patience, which requires sensitivity to health and other concerns raised by court officials, litigants and their lawyers, witnesses, and others.

## VIII.  Notice Provisions

(A)    Notice will be provided as to the expected termination of the Order as extended and modified at least one week in advance to allow courts to plan for the transition to fuller operations.

(B)    The clerks and court administrators of trial courts that conduct jury trials and convene grand juries will be provided sufficient notice of the resumption of jury proceedings to allow the complicated process of summoning potential jurors to be completed.

(C)    The impact of COVID-19 varies across the state, and the level of response and adjustment will likewise vary among courts. Courts should make available to the public the steps they are taking to safely increase operations while responding to the COVID-19 pandemic.

Recognizing that not all courts have a social media presence or website, the Administrative Office of the Courts will continue to post court-specific information as it becomes available on the AOC website at https://georgiacourts.gov/covid-19-preparedness/.

(D)    Pursuant to OCGA § 38-3-63, notice and service of a copy of this order shall immediately be sent to the judges and clerks of all courts in this State and to the clerk of the Court of Appeals of Georgia, such service to be accomplished through means to assure expeditious receipt, which include electronic means.  Notice shall also be sent to the media, the State Bar of Georgia, and the officials and entities listed below and shall constitute sufficient notice of the issuance of this order to the affected litigants, counsel for the affected litigants, and the public.

IT IS SO ORDERED this 10th day of July, 2020, and effective July 12, 2020, at 11:59 p.m.

_____
Chief Justice Harold D. Melton
Supreme Court of Georgia

# APPENDIX

[Guidance on Tolling of Filing Deadlines (March 27, 2020)](#)

[Guidance on Tolling of Statutes of Limitation (April 6, 2020)](#)

[Guidance on Deadlines and Time Limits Defined by Reference to Terms of Court (May 4, 2020)](#)

[Guidance on Grand Juries (May 4, 2020)](#)

[Further Guidance on Grand Juries (May 11, 2020)](#)

[Georgia Court Reopening Guide (June 11, 2020)](#)

[DPH Seventh Amended Administrative Order for Public Health Control Measures (June 16, 2020)](#)

cc:
Governor Brian P. Kemp
Lt. Governor Geoff Duncan
Speaker David Ralston
State Bar of Georgia
Administrative Office of the Courts
Judicial Council of Georgia
Council of Superior Court Clerks of Georgia
Department of Juvenile Justice
Criminal Justice Coordinating Council
Council of Accountability Court Judges
Georgia Commission on Dispute Resolution
Institute of Continuing Judicial Education of Georgia
Georgia Council of Court Administrators
Chief Justice's Commission on Professionalism
Judicial Qualifications Commission
Association County Commissioners of Georgia
Georgia Municipal Association
Georgia Sheriffs' Association
Georgia Association of Chiefs of Police
Georgia Public Defender Council
Prosecuting Attorneys' Council of Georgia
Department of Corrections
Department of Community Supervision
Georgia Court Reporters Association
Board of Court Reporting
State Board of Pardons and Paroles
Constitutional Officers Association of Georgia
Council of Magistrate Court Clerks
Council of Municipal Court Clerks

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the
minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto
affixed the day and year last above written.

_____, Clerk